OPINION
Defendant-appellant Linda M. Wheatley appeals from her conviction and sentence for Domestic Violence, following a bench trial on that charge. Wheatley argues that the trial court's guilty verdict is against the manifest weight of the evidence, because she proved by a preponderance of the evidence the affirmative defense of self-defense.
We conclude that Wheatley failed to prove, by a preponderance of the evidence, the affirmative defense of self-defense, because, among other things, the evidence showed that she was at fault in creating the situation that gave rise to the altercation that led to her being charged with Domestic Violence. Therefore, the trial court's guilty verdict is not contrary to the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
In March, 1999, Wheatley had been in a five-year relationship with Eric Thomas Frazier. The two lived together in an apartment in West Carrollton. They had had one child as a result of their relationship, Tyler Thomas Frazier, who was approximately 18 months-old at the time of the incident leading to the Domestic Violence charge against Wheatley.
On March 7, 1999, Frazier brought Tyler to the residence of Tyler's great-grandparents, Allison and Abner Couch, located at 3593 Soldiers Home Road in Jefferson Township. When they arrived, the only persons there were Wheatley's sister, Shannon Couch, and Shannon's friend, Christine. Knowing that Wheatley was at the residence next door, Frazier went there and told Wheatley to "come get her stuff," because he had put all of her things on the back porch of their West Carrollton apartment. When Wheatley asked Frazier if Tyler was next door, Frazier denied it, because he "knew what was about to happen." At about that time, Wheatley's mother, Sandra Humerick, accompanied by her parents, Abner and Allison Couch, pulled into the Couch's driveway. Realizing that Tyler was, in fact, next door, Wheatley said, "I'm going to get my baby," and Frazier told her, "no." Wheatley began to walk around the fence between the two properties, and Frazier jumped over the fence. According to Frazier, Humerick told Wheatley, "[d]on't come over in this yard or I'm going to kick your ass," and Wheatley responded to her mother by saying, "[g]et ready because here I come."
When Wheatley entered Couch's residence, "she ma[de] a beeline to her mother who was holding Tyler, and said, "give me my baby, I'm taking my baby." Wheatley grabbed Tyler's arm, "kind of pulling [Humerick] around." Humerick "turned back around pulling Tyler's arm from [Wheatley]," and giving Tyler to Shannon, telling her to take him into the back bedroom and lock the door. At the moment Humerick pulled Tyler away from Wheatley's grasp, Frazier came up behind Wheatley, and placed her in a "bear hug." Wheatley began to struggle with Frazier. The two wound up on the couch in the living room, with Frazier on top, holding Wheatley down, while Wheatley was "kicking, screaming, [and] fighting." Wheatley then bit Frazier on the forearm through his windbreaker jacket.
Frazier called out to "anybody who was listening," to get Tyler out of the house, because Wheatley "was out of control." At some point, Humerick told Frazier not to hurt Wheatley, but just to get her out of the house. Humerick came over to hold her daughter down so that Frazier could leave with Tyler. However, when Frazier let go of Wheatley, she broke free. Frazier grabbed Wheatley again, and the two of them "wrestled" over to the love seat. Humerick then walked over to the front door, opened it, and told Frazier "[t]o get her out." Frazier responded by picking up Wheatley, and throwing her out the front door. Ten minutes later, the police arrived, having been contacted by Allison Couch. Frazier showed the police the bite mark on his arm. Wheatley was placed under arrest and charged with Domestic Violence.
Wheatley pleaded not guilty to the charge, and the case was tried to the bench on March 29, 1999. Among the State's witnesses was Eric Thomas Frazier, who testified to the facts related above. On April 20, 1999, the trial court issued a Decision Entry finding Wheatley guilty of Domestic Violence, in violation of R.C.2919.25(A), and ordering a pre-sentence investigation. On May 17, 1999, the trial court sentenced Wheatley to 45 days in jail, which the trial court suspended, and, among other things, ordered her to pay $150 in court costs, attend parenting classes, and complete anger management counseling.
Wheatley appeals from her conviction and sentence for Domestic Violence.
 I
Wheatley's sole assignment of error is as follows:
 THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE LINDA M. WHEATLEY PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT HER ACTIONS WERE DONE IN SELF DEFENSE.
Wheatley concedes that the State proved all of the elements necessary in order to obtain a conviction for the offense of Domestic Violence. Nevertheless, Wheatley argues that she proved by a preponderance of the evidence that she was acting in self-defense when she bit Frazier, and that, therefore, the trial court's decision is against the manifest weight of the evidence. We disagree.
In order to prove the affirmative defense of self-defense, a criminal defendant must show, by a preponderance of the evidence, that he or she: (1) was not at fault in creating the situation giving rise to the argument or fight; (2) had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that the only way to escape was to use force; and (3) did not violate a duty to retreat. State v. Thomas (1997), 77 Ohio St.3d 323,326.
In either a civil or criminal trial, the weighing of the evidence and the determination of the credibility of witnesses are primarily for the trier-of-fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When determining whether a verdict is against the manifest weight of the evidence, an appellate court:
 reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin
(1983), 20 Ohio App.3d 172, 175.
Here, Wheatley failed to establish, by a preponderance of the evidence, the first two elements of the affirmative defense of self-defense. First, notwithstanding her assertions to the contrary, the testimony presented showed that Wheatley was at fault in creating the situation that gave rise to the altercation that led to her being charged with Domestic Violence. Once inside the Couches' (her grandparent's) residence, Wheatley, who was extremely agitated and upset, went over to her mother, Humerick, who was then holding 18 month-old Tyler, demanded, "give me my baby," and then announced, "I'm taking my baby." Wheatley then grabbed Tyler's arm, "kind of pulling [Humerick] around." Humerick, who did not want her daughter to take Tyler because of the highly emotional state she was in, pulled Tyler away from Wheatley. At that moment, Frazier, who was observing this situation, which he would later describe as a "small-tug-of-war," stepped in and placed a bear hug on Wheatley to restrain her. The two began struggling, winding up on the couch, where Wheatley bit Frazier on the arm.
Wheatley argues that the altercation between her and Frazier did not begin until Frazier placed her in a bear hug. We find that argument unpersuasive. The record demonstrates that Wheatley's own mother believed that Wheatley was too upset to take Tyler at the time Wheatley demanded that he be given to her. Wheatley then began to engage in a "small tug-of-war" with her mother over her 18 month-old son. The situation, created by Wheatley, herself, cried out for someone to intervene to prevent Tyler from being injured, and that is exactly what Frazier, Tyler's father, did, by restraining Wheatley with a bear hug.
Wheatley also failed to demonstrate by a preponderance of the evidence the second element of self-defense, i.e., that she had a bona fide belief that she was in imminent danger of death or great bodily harm and that the only way to escape was to use force. The Ohio Supreme Court has stated that the second element of self-defense "is a combined subjective and objective test."Thomas, supra, at 330. The trier-of-fact "first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, she reasonably believed she was in imminent danger." Id. (Emphasis sic.) "Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an honest belief that she was in imminent danger." Id. at 331. (Emphasis sic.) Thus, "self defense `is placed on the grounds of the bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties.' (Emphasis sic.)" Id., quoting State v. Sheets
(1926), 115 Ohio St. 308, 310.
Here, Frazier placed Wheatley in a bear hug at the moment she and her mother had just engaged in a "small-tug-of-war" over Tyler. Frazier was not a stranger to Wheatley — he had lived with her for the last five years, and had fathered her son. Humerick, Wheatley's mother, had made it clear to Wheatley that she did not think she was ready to take Tyler. At the time Frazier was holding Wheatley down, Wheatley's family members were close by. Under these circumstances, Wheatley could not have held either a reasonable or honest belief that she was in imminent danger of great bodily harm and that her only way to escape was to use force. It should have been apparent to her that she was simply being restrained so that she would not try to grab Tyler again. Additionally, it was Wheatley, herself, who escalated the violence by continuing to struggle with Frazier, eventually biting him on the forearm. Furthermore, Wheatley could have "escaped" her situation by calming herself, or by making it known that she was no longer going to try to snatch Tyler away, or by offering to leave the house.
Wheatley points out that during the altercation, Humerick admonished Frazier not to hurt her (Wheatley). However, the testimony showed that while Humerick warned Frazier not to hurt Wheatley, she also wanted Frazier to put Wheatley out of the house. According to Wheatley's grandmother, Allison Couch, Humerick told Frazier when he was on top of Wheatley on the couch, "Eric, Don't hurt her. Don't hurt her. Just get her up and get her out of the house." Frazier did throw Wheatley out of the house — at Humerick's insistence, and after Humerick, herself, opened the door for him so that he could throw her out.
Wheatley also notes that Allison Couch testified that she thought Frazier was committing an act of domestic violence against Wheatley when she saw him on top of Wheatley on the couch and that she called the police to come and stop it before Wheatley was hurt. However, Couch later admitted that she did not know if Frazier was hurting Wheatley or not, and that, in any event, her main objective was to get both Wheatley and Frazier out of her house, due to her concern that it would cause damaging stress on her husband, who is in poor health.
After reviewing the testimony presented, we conclude that this is not a case where the trial judge, acting as the trier-of-fact, lost her way and created a manifest miscarriage of justice. Wheatley failed to establish the first two elements of self-defense by a preponderance of the evidence, and therefore, the trial court's verdict finding Wheatley guilty of Domestic Violence was not against the manifest weight of the evidence.
Accordingly, Wheatley's sole assignment of error is overruled.
 III
Wheatley's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.
Copies mailed to:
Gregory P. Spears
Arvin S. Miller
Hon. Connie S. Price